No. 555 August 7, 2024 283

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. B. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. B. B.,
*Appellant.*

Yamhill County Circuit Court
23JU00828; A182281 (Control)

In the Matter of K. B. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. M. B.,
*Appellant.*

Yamhill County Circuit Court
23JU00828; A182038

Jennifer K. Chapman, Judge.

Argued and submitted June 14, 2024.

Ginger Fitch argued the cause for appellant child. Also on the brief was Youth Rights & Justice.

G. Aron Perez-Selsky filed the brief for appellant E. M. B.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, Pagán, Judge, and Hadlock, Senior Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this consolidated juvenile dependency appeal,[1] mother and her child, K, appeal the judgment of the juvenile court asserting jurisdiction over K, based on father's abuse of other children in the family, B and E, and mother's inability to protect the children from father's abuse.[2] ORS 419B.100(1)(c). In mother's sole assignment of error, she contends that the Department of Human Services (DHS) erred in finding a current, non-speculative risk of serious loss or injury to the child. K joins mother's assignment while separately assigning errors, contending that the juvenile court erred by (1) excluding from evidence father's testimony that he had passed polygraphs as part of his sex offender treatment, (2) ruling that the defects in the state's OEC 803(18a)(b) notice did not require disallowing the hearsay statements of testifying witnesses, (3) allowing father to testify whether he believed B's disclosures about his biological father over relevancy and vouching objections, (4) allowing mother to testify whether she believed B's disclosures about his biological father over a vouching objection, (5) allowing an expert to testify that K's child-center interview was "tainted" over a vouching objection, and (6) ruling that K was within its jurisdiction under ORS 419B.100(1)(c). For reasons explained below, we conclude that the juvenile court did not err in its evidentiary rulings. We further conclude that the juvenile court did not err in asserting jurisdiction over K, because there was sufficient evidence in the record to determine that mother was unable to protect K from risk of harm. We affirm.

In the first assignment, K contends that the juvenile court erred by excluding from evidence father's testimony that he had passed polygraphs as part of his sex offender treatment.

In Oregon, polygraph evidence is generally not admissible in either a civil or criminal trial under the rules of evidence. *State v. Brown*, 297 Or 404, 445, 687 P2d 751

---

[1] The judgment was entered on July 14, 2023. On November 7, 2023, we granted K's motion for leave to file a delayed appeal under ORS 419A.200(5). We consolidated K's appeal with mother's appeal on that date.

[2] Father is not a party to this appeal.

(1984). A narrow exception to this general rule was identified by the Oregon Supreme Court in *Fromdahl v. Fromdahl*, 314 Or 496, 508, 40 P2d 683 (1992). In *Fromdahl*, a dissolution of marriage case, the mother fled the state with the couple's children because she believed that the father was sexually abusing them. *Id.* at 500-01. At trial, the father argued that the mother was not acting in the best interests of the children. *Id.* at 502. To rebut that argument, the mother sought to introduce the father's failed polygraph result, arguing that her knowledge of its conclusions showed that she responded rationally and appropriately to the situation. *Id.* at 503. The polygraph was held to be admissible, but only to show the effect that the knowledge of the results had on the mother's state of mind; that is, to show that her beliefs were not delusional, and that her actions were reasonable under the circumstances. *Id.* at 508. The results were not admitted to show that the father had abused the children. *Id.*

Here, father did not ask the juvenile court to limit the admission of the results of the polygraph test for the limited purpose of showing his state of mind. Rather, father sought to admit the polygraph results to show that he had successfully completed sex-offender treatment. Father argued that the state was relying on an assertion that father had not successfully completed treatment and that the results of his polygraph tests "could have" factored into the court's decision. That is, father sought to admit them for their truth based on the premise that the court believed father was required to not only take polygraph tests, but to pass them as well. *See State v. Harberts*, 315 Or 408, 414, 848 P2d 1187 (1993) (stating that polygraph results are categorically inadmissible under OEC 403 to prove the "truth of the matter asserted" *i.e.*, to prove the truth of the polygraph results). Because father did not seek to admit the evidence pursuant to the narrow *Fromdahl* exception, the juvenile court did not err in excluding the polygraph results. However, we also agree with the state that the evidence had little probative value, and, thus, even if it was error to exclude the testimony, it was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (concluding that an error is harmless if there is little likelihood that it affected the verdict).

In K's second assignment of error, K contends that the juvenile court erred by admitting hearsay statements of testifying witness, B, despite defects in the state's OEC 803(18a)(b) notice.[3] Specifically, K argues that the state's notice did not satisfy the minimum requirements of OEC 803(18a)(b) because it failed to identify "the substance of the statement sought to be introduced and * * * the witness or the means by which the statement would be introduced." *State v. Chase*, 240 Or App 541, 546-47, 248 P3d 432 (2011) (holding that the state's notice was insufficient because it did not describe the substance of the victim's hearsay statements or how they would be offered).

OEC 803(18a)(b) permits the admission of hearsay statements by a person concerning abuse when the proponent of the hearsay statements has provided adequate notice of their intention to offer the statements. The notice requirement under OEC 803(18a)(b) "requires at a minimum that the state identify in its notice the substance of the statement sought to be introduced and also identify the witness or the means by which the statement would be introduced." *Chase*, 240 Or App at 546-47. Something more than providing discovery and notifying a defendant that the state intends to introduce statements contained within that discovery is required, but "the notice [is] not required to set forth the statements verbatim[.]" *Id.* at 546.

Here, the relevant notice stated:

"ODHS has a copy of the record of the statement and it has been provided in discovery[.]

"1.   ODHS intends to offer statements of [B] made to Kayla Noffsinger on February 7, 2023. As well as statements made to Rori Hartzell on February 7, 2023. The statements

---

[3] OEC 803(18a) provides, in relevant part:

"(b) A statement made by a person concerning an act of abuse * * * is not excluded by ORS 40.455 if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made[.] * * * No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown."

were made at [child abuse center]. The statements are memorialized in Evaluation: Medical Examination/Forensic Interview authored by Kayla Noffsinger, B.S. and Rori Hartzell, DNP, FNP-c. The statements made to Kayla Noffsinger are also memorialized in recorded video format. The written Evaluation: Medical Examination/Forensic Interview and recorded video were provided in discovery on March 17, 2023 by Oregon Department of Justice * * *.

"a. Medical Examination/Forensic Interview written report provided in discovery is attached as Attachment A.

"b. Video recording of Forensic Interview was provided in discovery March 17, 2023 * * *."

Here, K's argument relies on the contention that DHS's notice "identifies no specific substantive statements nor does it specify an intention to offer the entirety of the statements made by B on different days to separate people." However, as noted above, notice does not require a verbatim recitation of the relevant hearsay statements or detail precisely which witnesses would provide what statements. *See State v. Joseph*, 328 Or App 363, 369, 537 P3d 584 (2023) (notice was sufficient where the state identified "(1) the date on which the statements were made, (2) the place at which the statements were made, and (3) the particular item that contained the statements (the DVD). The DVD contained a finite number of statements by the victim, and defendant possessed the DVD and could easily ascertain the substance of the statements"); *State v. Ashkins*, 263 Or App 208, 216, 327 P3d 1191 (2014), *aff'd*, 357 Or 642, 357 P3d 490 (2015) (notice under OEC 803(18a)(b) was sufficient if it provides the date of the statements, the person who made the statements, and the person to whom the statements were made, with enough information about where the statements were made "to allow defendant to discern their substance").

In this case, DHS's notice stated that (1) B made hearsay statements to two people on February 7, 2023, which were memorialized in a forensic report and recorded video; (2) the video recording and report contained a finite number of B's statements; (3) the notice informed the parties that DHS intended to offer the hearsay statements made by B; and (4) K and parents possessed the recording and report.

That information sufficiently alerted K (and all parties) that DHS intended to offer all of B's hearsay statements made during the recorded interview. Thus, the juvenile court did not err in admitting those statements.

In K's third and fourth assignments of error, K argues that the juvenile court erred by admitting father and mother's statements about whether they believed B's disclosure of abuse. Similarly, in K's fifth assignment of error, K argues that the juvenile court erred by allowing an expert to testify that K's child-center interview was "tainted." K contends that the juvenile court erred by finding that the objected to testimony for all three of the assignments was "vouching," but nevertheless admitted the testimony.

Vouching refers to the expression of one's personal opinion about the credibility of a witness. *State v. Chandler*, 360 Or 323, 330-31, 380 P3d 932 (2016). In Oregon, witnesses are categorically prohibited from giving vouching testimony. *Id.* at 330. However, when a person "makes an out-of-court statement about the credibility of a witness or nonwitness complainant, that statement is subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses." *Id.* at 334. In other words, a person's "out-of-court statement about the credibility of a witness or non-witness complainant is not categorically inadmissible * * * if it is offered for a relevant, non-opinion purpose." *Id.* at 335.

Here, mother and father both testified about whether they believed B's disclosure that his biological father had abused him. DHS clarified that it was asking to show "how the children are treated in the home." That is, DHS did not elicit the parents' testimony to demonstrate that B was truthful, but rather to show how the parents handled the allegations of abuse in the context of their belief of the allegations. The jurisdictional bases pertaining to K focused on father's abuse of B (not B's biological father's abuse of B), and how mother responded to B's allegations and whether she could protect him from father. Because the parents' testimony was not focused on the veracity of B's allegations regarding his biological father, it was not impermissible vouching.

Similarly, the juvenile court did not err by allowing an expert to testify, over a vouching objection, that K's child-center interview was "tainted." Rather than convey a credibility opinion about K, the expert's testimony provided a tool to help the court assess K's credibility. Specifically, the expert told the court that some interviews show "red flags" when the child has information from outside sources. The expert did not comment on the veracity of K's statements, and explained that the interview was not invalid, but was just "muddier." Because the expert was merely providing information to help the court make its own credibility determinations, the expert did not offer impermissible vouching testimony. *See State v. Black*, 364 Or 579, 593-94, 437 P3d 1121 (2019) (holding that if testimony serves a relevant purpose rather than solely conveying a credibility opinion, it does not violate the vouching rule). As such, the juvenile court did not err by allowing the expert's testimony.

Finally, in K's sixth assignment of error and mother's only assignment of error, they argue that the juvenile court erred by ruling that K was within the court's jurisdiction under ORS 419B.100(1)(c).

ORS 419B.100(1)(c) provides juvenile courts with jurisdiction over a child whose "condition or circumstances are such as to endanger [their] welfare." To establish jurisdiction, the state must prove by a preponderance of evidence that the child's condition or circumstances pose "a reasonable likelihood of harm to the welfare of the child." *State v. S. T. S.*, 236 Or App 646, 654, 238 P3d 53 (2010). The evidence must show "that the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized." *Dept. of Human Services v. A. W.*, 276 Or App 276, 278, 367 P3d 556 (2016).

In this case, the record supports the juvenile court's conclusion that K was at risk of serious harm. Father, when he was a teenager, sexually abused his younger sisters when they were seven and four years old. Despite father completing sex offender treatment, father later reoffended. His biological daughter, E, testified that father sexually abused her when she was between seven and 15 years old. When K was two years old, K walked in on father abusing E.

Father threatened to hurt K if E did not stay quiet about the abuse. Additionally, B, father's stepson, disclosed that father abused him when he was ten years old. B and E were similar in age to K when father started abusing them, and evidence of a parent abusing one sibling supports a finding that other siblings are at risk of being sexually abused as well. *See Dept. of Human Services v. D. W. M.*, 296 Or App 109, 119, 437 P3d 1186 (2019) (evidence of the father sexually abusing a sibling supported a concern that the father posed a current risk of harm to the child).

The record also supports the juvenile court taking jurisdiction over K because mother was unable to protect the other children. Mother testified that father did not pose a safety threat to B. Mother did not believe B and accused him of lying. E testified that mother acknowledged that father was abusing E, but nevertheless refused to leave him. Mother being in denial about the abuse and refusing to protect E and B put all of the children at risk of harm.

Contrary to K's argument, the juvenile court did not determine that father's abuse was a *per se* reason to take jurisdiction. As explained above, the record as a whole supports the finding that father has a pattern of abusing children, that mother was unable to protect K from father, and that the abuse put K at risk of harm. The juvenile court did not err by taking jurisdiction over K.

Affirmed.